IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

RICHARD MCNEEMER,

        Plaintiff,

v.                                             CIVIL ACTION NO. 2:23-cv-00493

LT. TIMOTHY TIBBS, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Steve Caudill's Motion to Dismiss. [ECF No. 7]. Plaintiff Richard McNeemer ("Plaintiff") timely responded, [ECF No. 11], and Defendant Caudill replied, [ECF No. 12]. For the following reasons, Defendant Caudill's Motion to Dismiss, [ECF No. 7], is **GRANTED.**

I. Background

Plaintiff filed suit in this court on July 20, 2023, against Defendants Timothy Tibbs and Steve Caudill. [ECF No. 1, ¶¶ 1–3]. His Complaint states three claims: (1) outrageous conduct; (2) excessive force in violation of the Eighth Amendment of the United States Constitution, brought under 42 U.S.C. § 1983; and (3) deliberate indifference/supervisor liability. *Id.* ¶¶ 11–22. Only the third count is directed at

1

Defendant Caudill. *Id.* ¶¶ 20–22. Plaintiff seeks compensatory and punitive damages as well as attorneys' fees and costs. *Id.* ¶¶ 14, 19.

At all times relevant to this matter, Plaintiff was incarcerated at North Central Regional Jail ("NCRJ"). *Id.* ¶ 1. Plaintiff alleges that on or about March 31, 2022, he was in his cell and had been placed on suicide watch. *Id.* ¶ 4. After Plaintiff told a trustee that he needed to speak with someone about his medications and have a phone call, Defendant Tibbs—a correctional officer at NCRJ—began to harass and curse at Plaintiff before approaching Plaintiff's cell door, opening the food slot, and asking Plaintiff if he was going to hurt himself. *Id.* ¶¶ 3–5. Plaintiff said no and again asked to speak with a nurse or an officer, to which Defendant Tibbs responded, ". . . you think I'm a fucking whore?" *Id.* ¶ 5. Defendant Tibbs then allegedly pepper-sprayed Plaintiff in the face, buttocks, and genitals through the cell door's food slot. *Id.* He offered no warning or justification for this use of force. *Id.* After pepper-spraying Plaintiff, Defendant Tibbs then cuffed Plaintiff behind his back through the door and pushed him to the ground before entering the cell and lifting Plaintiff up off the floor by his cuffs. *Id.* After being placed in a smaller cage for thirty minutes and being assessed by a nurse, Plaintiff was taken to shower but he was not given soap and had to put the same suit back on afterwards, which caused his skin to burn for days. *Id.* ¶ 6.

After his incident, Defendant Tibbs allegedly attempted to "cover up" the incident by filing a false incident report against Plaintiff. *Id.* ¶ 7. Plaintiff was ultimately placed in segregation due to this report. *Id.*

Defendant Caudill, who is located in Charleston, West Virginia, is the Director of Security for the West Virginia Division of Corrections and Rehabilitation ("WVDCR"). *Id.* ¶ 2. In his role as Director of Security, Defendant Caudill reviews all use-of-force reports. *Id.* Plaintiff alleges that during a one-year period, Defendant Caudill received over 100 reports accusing Defendant Tibbs and other correctional officers at NCRJ of use of force. *Id.* Plaintiff claims that, due to the quantity of use-of-force reports Defendant Caudill reviewed, he was on notice that "Defendant Tibbs ha[d] been involved in an excessive number of use of force events[,] . . . that Tibbs . . . presented a clear and present danger to the inmates," and "that excessive force was routinely taking place at the NCRJ," but he failed to intervene to prevent constitutional violations from occurring. *Id.*

On November 22, 2023, Defendant Caudill filed the instant Motion to Dismiss, arguing that Plaintiff's Complaint should be dismissed as to Defendant Caudill for failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 8 and 12(b)(6). [ECF No. 7, at 1]. Specifically, Defendant Caudill contends that "the Complaint does not set forth a sufficient factual basis to state a plausible claim against Defendant Caudill for deliberate indifference." *Id.* Alternatively, Defendant Caudill seeks dismissal on the basis of qualified immunity. *Id.*

## II. Legal Standard

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). The Federal Rules of Civil Procedure require that a complaint make only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-cv-01334, 2019 WL 956806, at *1 (S.D. W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). Thus, "a complaint is to be construed liberally so as to do substantial justice." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017).

To survive a motion to dismiss, the plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing

4

*Twombly*, 550 U.S. at 556). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

### III. Discussion

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. "After incarceration, only the 'unnecessary and wanton infliction of pain,' . . . constitutes cruel and unusual punishment." *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (cleaned up) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The prohibition of cruel and unusual punishment gives inmates a "right to be free from malicious or penologically unjustified infliction of pain and suffering." *Thompson v. Virginia*, 878 F.3d 89, 102 (4th Cir. 2017) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Pepper-spraying an inmate who is compliant and poses no physical threat without warning or justification violates this standard. *See Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021).

Here, Plaintiff alleges that he was pepper-sprayed in his face and genitals without warning or justification. [ECF No. 1, ¶ 5]. While I find these allegations troubling, the allegations against Defendant Tibbs are not at issue here, and I express no opinion as to the likelihood of Plaintiff's success on Counts One or Two of his

Complaint. Defendant Caudill, however, is only named in Count Three of the Complaint, and thus I turn my attention to that count and must determine whether he violated Plaintiff's Eight Amendment right to be free from cruel and unusual punishment by his failure to intervene or prevent the pepper-spraying Plaintiff endured on or about March 31, 2022.

Plaintiff brings his Eight Amendment claim under 42 U.S.C. § 1983. The Supreme Court has held that anyone who—while acting under the color of state law—"deprives a person of any rights, privileges, or immunities secured by the Constitution and laws" may be held liable under § 1983. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (internal quotation marks omitted). It is well-established that multiple actors can be the cause of a single constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). Although § 1983 liability may not be premised on a theory of *respondeat superior*, supervisory officials who are on notice that their subordinates are acting unlawfully may be held liable if they fail to intervene and prevent constitutional injuries, *id.*, or if their "supervisory indifference or tacit authorization of subordinates' misconduct [is] a causative factor in [those injuries]," *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

> To succeed in a supervisory liability case, a plaintiff must demonstrate:
>
> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[]; and (3) that there

6

>was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw*, 13 F.3d at 799 (internal quotation marks omitted). To establish the first element, the plaintiff must show that "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id.* "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions." *Id.* (quoting *Slakan*, 737 F.2d at 373); *see also Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014).

Here, Plaintiff's claim against Defendant Caudill is entirely conclusory in nature, as he fails to allege facts sufficient to state a plausible claim for supervisory liability. *See, e.g.*, [ECF No. 1, ¶¶ 2 ("Defendant Caudill was on notice that excessive force was routinely taking place at the NCRJ."), 22 ("Caudill had knowledge that [Defendant Tibbs] presented a substantial risk of harm to the inmates as a result of the vast number of excessive force/use of force events attributed to [Defendant Tibbs].")]. Plaintiff's allegations are legal conclusions which the court need not accept as true. *See Twombly*, 550 U.S. at 555 (explaining how courts "are not bound to accept as true a legal conclusion couched as a factual allegation") (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In his Complaint, Plaintiff alleges that Defendant Tibbs was involved in over 100 use of force events over the course of a one-year period and that Defendant

7

Caudill reviewed all use of force reports. [ECF No. 1, ¶ 2]. He does not, however, allege that those incidents took place prior to the March 31, 2022, pepper-spraying. He also does not allege incidents of similar conduct, i.e., that those use of force events were instances of unwarned and unjustified use of pepper-spray. He pleads no facts that indicate there was a widespread practice of the particular constitutional violation of unjustified pepper-spraying at NCRJ prior to the events that took place here.

Rather, Plaintiff simply alleges that Defendant Caudill knew of Defendant Tibbs' alleged tendency to engage in unlawful conduct generally because Caudill "personally reviewed uses of force events that exceed[ed] 100 events in [one]-year's time." *Id.* ¶ 21. In making this claim, he asks the court to jump hand-in-hand with him to the conclusion that Defendant Caudill tacitly authorized Defendant Tibbs' alleged misconduct. It is not an undue burden to require that the pleader meet the minimal standards of stating the wrong in a fashion which is recognized as sufficient under *Twombly* and *Iqbal* and the Federal Rules. Plaintiff has not established a "widespread practice of the particular unconstitutional conduct" which he claims he experienced. *See Shields v. Tibbs*, No. 2:23-cv-00491, 2024 WL 1804388, at *3 (S.D. W. Va. Apr. 25, 2024). As such, his claim for supervisory liability must be dismissed.

### IV.  Venue

Finally, the court has concerns about whether the Southern District of West Virginia is the best venue for this case. As a general matter, cases arising under

federal law "may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," or (3) any judicial district in which any defendant is subject to the court's personal jurisdiction if there is no other district. 28 U.S.C. § 1391(b)(1).

The federal venue statute allows a district court to "transfer any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). This statute gives courts *sua sponte* authority to transfer an action upon consideration of certain factors, such as convenience of parties and witnesses as well as the interest of justice. *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure §§ 3844, 3847–48 (4th ed. 2023). It is proper, however, to first provide the parties with notice and an opportunity to be heard and present their views about the transfer. See, e.g., *Nalls v. Coleman Low Fed. Inst.*, 440 F. App'x 704, 706 (11th Cir. 2011); *Moore v. Rohm & Haas Co.*, 446 F.2d 643, 647 (6th Cir. 2006); *Starnes v. McGuire*, 512 F.2d 918, 934 (D.C. Cir. 1974) ("[B]efore ordering transfer the judge should, at minimum, issue an order to show cause why the case should not be transferred, and thereby afford the parties an opportunity to state their reasons for believing that this forum is most convenient or that the proposed alternative forum is inconvenient or not within the ambit of § 1404(a)).

All of the alleged activities that form the basis of the Complaint occurred at North Central Regional Jail, which is located in the Northern District of West Virginia. Furthermore, Plaintiff makes no statement as to why the Southern District of West Virginia is the proper venue, nor has he alleged where each Defendant resides, except for Mr. Caudill, who has now been dismissed from this action. In light of the foregoing, I **ORDER** the parties to brief me on whether this district is the best venue to litigate this case. The parties have 14 days from the entry of this order to respond if such party opposes a *sua sponte* transfer of venue.

### V. Conclusion

For the foregoing reasons, Defendant Caudill's Motion to Dismiss for Failure to State a Claim, [ECF No. 7], is **GRANTED**. Defendant Caudill is hereby **DISMISSED** from this action. As such, Defendant Caudill's Motion for Leave to Submit Supplemental Authority, [ECF No. 28], is **DENIED as moot.** Finally, I **ORDER** the parties to submit briefs within 14 days of the entry of this order as to whether Southern District of West Virginia is the proper venue to litigate this case.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     June 4, 2024

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE